UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DENISE MARIE BUE,<br><br>      Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>      Defendant. | Case No. 3:11-cv-05420-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

   Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

### FACTUAL AND PROCEDURAL HISTORY

   On July 25, 2006, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging disability as of November 15, 2000, due to cervical disc disease, headaches, neck and back pain, a pinched nerve, and depression. See Administrative Record ("AR") 16, 150, 155, 178. Both applications were denied upon initial administrative review and on reconsideration. See AR 16, 86, 91, 103 A hearing was held before an administrative law judge ("ALJ") on January 15, 2010, at which plaintiff, represented by

ORDER - 1

counsel, appeared and testified, as did a vocational expert. See AR 29-78.

On January 28, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 16-25. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 7, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On June 2, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on August 18, 2011. See ECF #8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in failing to properly consider all of her "severe" impairments; (2) in failing to find her impairments met or medically equaled the criteria of any of those contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"); and (3) in assessing her residual functional capacity. For the reasons set forth below, however, the Court disagrees the ALJ erred in determining plaintiff to be not disabled, and therefore hereby finds the ALJ's decision should be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See

ORDER - 2

Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

ORDER - 3

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative

ORDER - 4

evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

### A. Plaintiff's Pain Disorder and Posttraumatic Stress Disorder

At step two in this case, the ALJ found plaintiff had the following severe impairments: degenerative neck and back problems, depression, anxiety, carpal tunnel syndrome, and obesity. See AR 18. Plaintiff argues the ALJ erred in not finding she had severe impairments consisting of a pain disorder and a posttraumatic stress disorder ("PTSD") as well, pointing out that Jeffrey D. Hart, M.D., a consultative examining psychiatrist, gave her a diagnosis of a pain disorder associated with both psychological factors and a general medical condition, along with diagnoses of recurrent major depression and a generalized anxiety disorder, and assessed her with a global assessment of functioning ("GAF") score of 45. See AR 421, 423. He opined as well that unless there was "significant improvement in her physical capacity and reduction in pain," plaintiff was "unlikely" to "be capable of reasonable gainful employment." AR 423.

ORDER - 5

As pointed out by plaintiff, a GAF score of 45 indicates "indicates '[s]erious symptoms" or "serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning."). In assessing plaintiff's residual functional capacity later in his decision, the ALJ stated he was giving "little weight or no weight" to Dr. Hart's GAF score "in light of the objective medical record and [plaintiff's] symptom magnification." AR 22. But since, as discussed below, the ALJ did not err in rejecting that score on this basis,[1] any error in omitting Dr. Hart's diagnosis of a pain disorder from his step two determination is harmless.

This is because the ALJ both found plaintiff had other severe impairments at step two of the sequential disability evaluation process – and thus did not stop the evaluation process at that step – and, as just discussed, later considered any work-related limitations Dr. Hart attributed to his diagnosis of a pain disorder (as represented by the GAF score he assessed) in determining plaintiff's residual functional capacity, and properly rejected them. see Hubbard v. Astrue, 2010

---

[1] As noted above, an ALJ need not accept the opinion of a treating physician, "if that opinion is . . . inadequately supported by clinical findings" or "by the record as a whole." Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. Essentially, the only objective findings contained in Dr. Hart's report is a mental status examination he performed, which at most revealed a depressed and anxious mood and a depressed, anxious and somber affect. See AR 421. In addition, a physician's opinion premised on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149. In this case, in regard to this latter basis for rejecting Dr. Hart's opinion, plaintiff does not challenge the ALJ's adverse credibility determination, nor does the undersigned find any error in regard thereto, which relied in part on the evidence in the record of exaggerated pain complaints. See AR 21-23; Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (in determining claimant's credibility, ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid"). A GAF score, furthermore, is "a *subjective* determination based on . . . 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta, 500 F.3d at 1076 n.1. Accordingly, discounting Dr. Hart's GAF score on the basis that plaintiff's symptom complaints were not fully credible was entirely proper.

ORDER - 6

WL 1041553 *1 (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered claimant's impairments later in sequential analysis, any error in omitting those impairments at step two was harmless) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two was harmless, where ALJ's decision showed any limitations posed thereby were considered later in sequential evaluation process); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error in ALJ failing to consider plaintiff's obesity at step two harmless, as ALJ did not err in evaluating plaintiff's impairments at later steps).

As for plaintiff's alleged PTSD, Dr. Hart did not actually find she currently suffered from that impairment. Rather, he stated that her PTSD symptoms were in remission, although should she again "be asked to return to a position in which assault is likely," it was "highly likely that her PTSD symptoms [would] be aggravated and reawakened." AR 423. As the record does not indicate plaintiff has returned to such a position or similar environment, it appears her PTSD symptoms have not been "reawakened". Plaintiff was diagnosed with PTSD in late November 2009, by Philip G. Lindsay, M.D., who also assessed her with a GAF score of 40. See AR 543, 571; Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (10th Cir. 2006) ("A GAF score of 31-40 is extremely low, and 'indicates . . . major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.'") (quoting DSM-IV-TR at 32). The ALJ considered Dr. Lindsay's diagnosis and GAF score, but rejected them because they were "based on [plaintiff's] exaggerated complaints and [were] not supported by the record as a whole." AR 23. As in regard to Dr. Hart's opinion, both of these reasons were a proper basis for rejecting Dr. Lindsay's opinion as well.[2]

---

[2] Dr. Lindsay also diagnosed plaintiff with "chronic pain" at the time (AR 543), and diagnosed her with both PTSD and a pain disorder in mid-October 2008, as well, along with a GAF score of 45 (see AR 563). But because, as just discussed, the ALJ gave valid reasons for discounting Dr. Lindsay's late November 2009 PTSD diagnosis and GAF score of 40, any error the ALJ committed in failing to specifically mention the "chronic pain" diagnosis here too was

ORDER - 7

B. <u>Plaintiff's Bilateral Shoulder Rotator Cuff Tendonitis</u>

Plaintiff also argues the ALJ erred in not finding she had a severe impairment consisting of bilateral shoulder rotator cuff tendonitis, with which she was diagnosed in early October 2007, by Gary Schuster, M.D., another consultative, examining physician. See AR 522. Once more, any error that may have been committed by the ALJ in not specifically mentioning this diagnosis in his decision was harmless. It is true, as plaintiff notes, that Dr. Schuster found "limitation based on pain with repetitive activity" in regard to her shoulder impairment, even though he also noted she had "current improvement" in regard thereto with "no limitation of mention." Id. Dr. Schuster also opined in relevant part as follows:

> Functionally, . . . [plaintiff] when the residuals of [her] neck injury, mid-back and lower back injury are combined with the carpal tunnel and ulnar nerve impingement and the hand, [she] is rendered incapable of returning to the workforce. She is not capable of sustaining sedentary activity based on . . . her functional capacities. Repetitive activities will clearly be precluded because of the carpal tunnel and in addition to the pain impairment in regards to the hand. Lifting, carrying, pushing and pulling and working at or above shoulder level are precluded and markedly limit [plaintiff's] vocational capabilities. When all of the above problems are taken in summation this patient is rendered medically incapable of returning to the workforce and is permanently and fully disabled.

AR 523-24.

In regard to Dr. Schuster's opinion, the ALJ stated:

> The undersigned has considered the conclusion by [Dr.] Schuster . . . that the claimant is permanently disabled (Exhibit 12F). However, little or no weight is given to this document. This conclusion appears to be based on the claimant's subjective complaints and not the objective medical evidence. It is not consistent with the other medical record that indicates she could perform at the light work level. (Exhibit 4F and 6F).

---

harmless. See AR 543 (noting only that plaintiff had "a constricted affect" during mental status examination. For the same reasons – namely Dr. Lindsay's reliance on plaintiff's subjective complaints and the lack of objective medical support (see AR 562 (revealing unremarkable mental status examination results)) – any error on the part of the ALJ in not expressly mentioning the mid-October 2008 diagnoses and GAF score was also harmless.

ORDER - 8

AR 23. As already discussed, the record contains evidence of plaintiff's exaggeration of her pain symptoms, which the ALJ properly relied on in part to discount her credibility. Indeed, as noted by the ALJ, another consultative, examining physician found "profound and obvious symptom magnification out of proportion to objective physical findings." AR 23; see also AR 541. That examining physician, furthermore, offered no shoulder-related diagnosis. See AR 541; see also Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (where examining physician opinion is based on independent clinical findings, ALJ may disregard conflicting opinion in another examining physician's diagnosis). Indeed, plaintiff's treating physician, David W. McKinney, M.D., while finding she had "too many positive findings in her shoulder" to believe her complaints were "all" somatic in origin, he rejected the diagnosis of rotator cuff tendinitis, as her "documented signs and symptoms . . . certainly [were] not that dramatic." AR 240. Accordingly, here too the ALJ did not commit harmful error.

II. The ALJ's Step Three Determination

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. See id. The burden of proof is on the claimant to establish he or she meets or medically equals any of the impairments contained in the Listings. See Tacket, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or

ORDER - 9

psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.") (emphasis in original). However, "symptoms alone" will not justify a finding of equivalence. Id. The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant fails to set forth any reasons as to why the Listing criteria have been met or equaled.

ORDER - 10

See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (ALJ's failure to discuss combined effect of impairments was not error, noting claimant offered no theory as to how, or point to evidence showing, his impairments combined to equal listed impairment).

At step three in this case, the ALJ determined that plaintiff did not have an impairment or a combination of impairments that either met or medically equaled any of those contained in the Listings. See AR 18-20. Plaintiff argues the ALJ erred in failing to find her mental impairments met or medically equaled the criteria of Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders) in light of the GAF score assessed by Dr. Hart. But, as discussed above, there was no error on the ALJ's part in rejecting that score and the level of impairment it indicates, and therefore the ALJ's step three determination cannot be faulted on this basis. Nor does the Court find the record lacks sufficient clarity regarding the existence of Listing-level severity to warrant requiring the ALJ to further develop the record by obtaining opinion testimony from a mental health expert. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further develop record triggered only when there is ambiguous evidence or when record is inadequate to allow for proper evaluation of evidence).

III. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

ORDER - 11

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the residual functional capacity:

> **. . . to perform light work . . . lifting 20 pounds occasionally and 10 pounds frequently; sitting and standing at will; walking 4 out of 8 hours; unlimited pushing and pulling and gross fine manipulation; limited frequent overhead reaching with the left upper extremity; frequent grasping, handling, fingering, and reaching; can climb stairs; no ladders, ropes, scaffolds or running; occasionally bend, stoop, crouch, crawl, balance, twist, squat; gets along with others; understands simple instructions; concentrates and performs simple tasks; and responds and adapts to work place changes and supervision but in a limited public/ employee contact setting.**

AR 20 (emphasis in original). Plaintiff argues that in assessing her with this RFC, the ALJ failed to factor in limitations from all of her severe mental and physical impairments. But she provides no specific examples of such excluded limitations. See Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered). In addition, as discussed above, plaintiff has failed to show any harmful error on the ALJ's part in evaluating the medical evidence in the record. Accordingly, she also has failed to demonstrate

ORDER - 12

the ALJ erred here as well.[3]

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly concluded plaintiff was not disabled, and therefore hereby affirms defendant's decision.

DATED this 6th day of February, 2012.

*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

---

[3] Plaintiff also argues that "[t]hroughout the record, both examining and treating physicians limited [her] to [being able to perform] *less than light work*." ECF #10, p. 8 (emphasis in original). But the only example she cites to is a 2005 opinion from her physical therapist that she could not perform the job of medical record coder, a job performed at the light level of work. Clearly, a physical therapist is not a treating or examining physician. In addition, while it may be plaintiff was found to be incapable of performing this particular light work level job by that therapist, this does not mean she is unable to perform other light work level jobs. Indeed, Dr. McKinney himself found her to be capable of performing the job of medical record coder. See AR 307-09. Accordingly, the Court finds this reason for challenging the ALJ's assessment of her RFC lacks merit as well.

ORDER - 13